<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **JOON BANG,** *et al.***, individually and on behalf of all others similarly situated,** | |
| *Plaintiffs*, | Civil Action No. 15-6945 |
| v. | **OPINION** |
| **BMW OF NORTH AMERICA, LLC and BAVARIAN MOTOR WORKS,** | |
| *Defendants*. | |

**THIS MATTER** comes before the Court by way of Defendant BMW of North America, LLC's ("BMW NA") motion to dismiss Plaintiffs Joon Bang, <u>et al.</u>'s ("Plaintiffs") Second Amended Complaint. Dkt. No. 35. The Court considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendant's motion is **DENIED**.

**I. BACKGROUND**

In this putative class action, Plaintiffs seek damages against BMW NA and Bavarian Motor Works ("BMW-GER")[1] (together, "BMW" or "Defendants") for fraudulently concealing defects in the engines of certain BMW motor vehicle models that shorten the vehicle's battery life and cause increased oil consumption.

---

[1] The Court notes that Defendant Bavarian Motor Works a/k/a Bayerische Motoren Werke Aktiengesellschaft has not joined in Defendant BMW NA's motion to dismiss, as it has not yet been served. BMW NA's Br. at 1, Dkt. No. 35-1.

Defendant BMW-GER is a corporation organized and in existence under the laws of Germany, with its principal place of business in Munich. Second Amended Complaint ("SAC") ¶ 13, Dkt. No. 32. Defendant BMW NA is a corporation organized and in existence under the laws of the State of Delaware, with its principal place of business in Woodcliff Lake, New Jersey. Id. ¶ 14. BMW-GER is the parent company of BMW NA. Id. ¶ 13. Defendants are engaged in the business of importing, assembling, marketing, distributing, and warranting BMW automobiles in the United States. Id. ¶ 14.

Plaintiffs are individuals who purchased new or used BMW vehicles[2] containing an "N63" engine ("Class Vehicles") between September 2011 and February 2015. Id. ¶¶ 5-12. The eight named Plaintiffs include two residents of California who purchased their vehicles in the state (Joon Bang and Christopher LeSieur), a resident of Washington who also purchased his vehicle in the same state (Razvan Victor Bengulescu), a resident of Pennsylvania who purchased his vehicle in New York (Gerald Bezems), a resident of Missouri who purchased his vehicle in Kansas (Scott Crockett), a resident of Illinois who purchased his vehicle in Texas (Rifat Gorener), a resident of Connecticut who also purchased his vehicle there (Lawrence Marcus), and a resident of New York who purchased his vehicle in New Jersey (Mikhail Suleymanov) (together, "Named Plaintiffs"). Id. Plaintiffs seek to certify a nationwide class of all persons and entities who have purchased or leased a Class Vehicle in the United States. Id. ¶ 180. Alternatively, they seek to certify seven different state classes.[3] Id. ¶ 181.

---

[2] The specific BMW class models are 5 series, 6 series, 7 series, X5, and X6 vehicles from 2009 through 2014. SAC ¶ 1.

[3] The putative state classes individuals who purchased Class Vehicles in each of the following states: New Jersey, California, New York, Washington, Kansas, Texas, and Connecticut. SAC ¶ 181.

A. **Alleged Defects**

   1. The Oil Consumption Defect

First, Plaintiffs allege that the N63 engine consumes excessive amounts of engine oil, leading to a need for frequent oil changes "to prevent catastrophic engine damage or failure" (the "Oil Consumption Defect"). Id. ¶ 38. Engine oil serves an essential function. It lubricates the moving parts of an internal combustion engine, cleans and seals, and dissipates heat throughout the engine. Id. ¶ 65. Therefore, the Oil Consumption Defect decreases the lubrication available to engine parts, which results in premature failure. Id. ¶ 66. Plaintiffs allege that the Oil Consumption Defect is a safety concern posing "serious risk of accidents and injury" because "it prevents the engine from maintaining the proper level of engine oil, and causes voluminous oil consumption that cannot be reasonably anticipated or predicted." Id. ¶ 67.

Plaintiffs point to four main sources of information as evidence of the Oil Consumption Defect. First, they assert that a 2015 study by the publication Consumer Reports indicates that vehicles containing the N63 engine typically needed more oil between changes than other vehicles on the market. Id. ¶¶ 40-44. Next, they note that consumer complaints made to the National Highway and Traffic Safety Administration ("NHTSA") from as early as May 2013 showed that some owners of Class Vehicles needed to add oil more often than they anticipated, for instance, every 500 or 1500 miles. Id. ¶ 48. Third, consumer complaints on online forums also highlight the defect. Id. ¶ 49. Lastly, they point to BMW-issued Technical Service Bulletins ("TSB")[4] that address the Oil Consumption Defect. Id. ¶¶ 52-56. For instance, BMW issued a TSB in June 2013 that stated: "customers with one of the vehicles above may complain that the engine's oil

---

[4] TSBs are recommended repairs issued by automotive vehicle manufacturers, exclusively directed toward automotive dealers. Id. ¶ 51, n. 3.

3

consumption is 'too high,' resulting in engine oil top-ups and workshop visits." Id. ¶ 53. Plaintiffs allege that BMW was aware of the Oil Consumption Defect at least as early as 2008 based on the above sources of information, as well as testing. Id. ¶ 68.

BMW subsequently offered a few remedial services to affected customers. Id. ¶ 60. They included: the free replacement of several vehicle components, even if the vehicles were out of warranty; discounts on new BMW vehicles to replace a defective one; a decrease in the recommended oil change interval from every 15,000 miles to every 10,000 miles; and vouchers for $50 worth of BMW accessories. Id. ¶¶ 60-64. Nonetheless, Plaintiffs allege that BMW did not address the underlying causes of excessive oil consumption, and instead merely instructed service technicians to add oil in response to consumer complaints. Id. ¶¶ 54, 60.

Plaintiffs allege that BMW failed to disclose the existence of the Oil Consumption Defect. Id. ¶ 69. As a result, purchasers of Class Vehicles have suffered damages in the form of out-of-pocket expenses such as additional service visits, maintenance costs, and the purchase of BMW-approved engine oil. Id. ¶ 70. Plaintiffs allege that Class Vehicle owners are also discouraged from traveling long distances because "their vehicles may catastrophically fail and strand them or potentially cause a life-threatening accident." Id. Finally, Plaintiffs allege that Class Vehicles have suffered reputational damage that decreases their resale value. Id.

2. The Battery Defect

Second, Plaintiffs allege that Class Vehicles suffer from premature battery failure (the "Battery Defect"). Id. ¶ 71. Specifically, the proximity of the turbochargers inside the engine "causes the additional accumulation of excessive heat," which requires the fans to run even after the engine is off, draining the battery. Id. ¶ 72.

4

As with the Oil Consumption Defect, Plaintiffs point to media articles, consumer complaints in online forums, and BMW-issued TSBs as sources of information on the Battery Defect. For example, they note a June 2015 article in Road & Track magazine that stated, "BMW's N63 twin-turbo V8 happens to chew through batteries." Id. ¶ 72. In December 2014, BMW issued a TSB that instructed BMW service representatives to replace N63 vehicle batteries at every oil change, which applied to BMW X5s produced from April 2010 to June 2013. Id. ¶¶ 76-77. Class Vehicle owners were to be provided free replacement batteries for the duration of the warranty period. Id. ¶ 76.

Plaintiffs allege that BMW knew about the Battery Defect "before the sale of Class Vehicles" through testing and early consumer complaints. Id. ¶ 84. As such, they had a duty to disclose the defect. Id. ¶ 85. Plaintiffs allege that, upon the warranty expiration, they will need to replace their batteries "as often as once a year or 10,000 miles, at significant expense." Id. ¶ 83.

### B. BMW's Warranties and Representations

All Class Vehicles come with a New Vehicle Limited Warranty (the "Warranty"). Id. ¶ 86. The warranty protects against "defects in materials or workmanship to the first retail purchaser and to each subsequent purchaser" for a period of four years or 50,000 miles—whichever comes first. Id. ¶ 87. Under the warranty, BMW states it "will, without charge for parts or labor, either repair or replace the defective part(s) using new or authorized remanufactured parts." Id. It requires owners and lessees to bring their vehicles to a BWM dealership for warranty repairs. Id.

Plaintiffs allege that the Warranty fails to protect purchases of Class Vehicles from the Oil Consumption Defect or the Battery Defect because "BMW's efforts temporarily mask these conditions instead of providing purchasers with non-defective vehicles as originally warranted." Id. ¶ 89. As a result, Class Members are still left with a "defective engine" that consumes excess

oil after the Warranty expires.  Id.  ¶ 90.  Likewise, vehicle owners must continue to replace the battery every 10,000 to 20,000 miles for the duration of ownership.  Id.  ¶ 91.

### C. Named Plaintiffs' Experiences

The SAC describes Named Plaintiffs' individual experiences.  Generally, Named Plaintiffs learned of the Oil Consumption Defect or Battery Defect shortly after the purchase of their vehicles when their cars alerted them to "check engine oil" or to check the battery.  See id. ¶¶ 102, 128, 136-37, 145, 159, 167.  As a result, Named Plaintiffs have had to bring their vehicles to BMW dealers many times for additional oil and servicing.  For example, Plaintiff Bang first brought her vehicle to the Beverly Hills BMW service center at 2,607 miles regarding her vehicle's excessive consumption of engine oil.  Id. ¶ 101.  She then brought the car back at least seven more times to address the same problem.  Id. ¶ 102-04.  Plaintiff Bengulescu's vehicle "requires an additional quart of oil approximately every other week."  Id. ¶ 101.

Named Plaintiffs whose cars were under warranty received oil and battery replacements from BMW pursuant to the warranty.  See Id. ¶¶ 101, 112, 121, 129, 146-50, 170.  One Plaintiff, Mr. LeSieur, received replacement component parts, including a vacuum pump, injectors, mass air flow meters, ventilation pipes, and sensors.  Id. ¶ 148.  Plaintiff Gorener, who purchased his vehicle out of warranty, has had to add engine oil on his own on at least 15 occasions since he purchased his vehicle.  Id. ¶ 101.  Plaintiffs claim that despite giving BMW several opportunities to cure, "Defendants have failed to correct the underlying Oil Consumption Defect and Battery Defect."  Id. ¶¶ 131, 161, 172.

Named Plaintiffs allege that they relied on BMW's New Vehicle Limited Warranty (the "Warranty") when purchasing their vehicles.  See Id. ¶¶ 105, 110, 119, 127, 142, 156, 166.  They allege BMW never informed them of either the Oil Consumption Defect nor the Battery Defect,

6

and that they would not have purchased their vehicles had they been aware of the defects. See Id. ¶¶ 106-7, 115-16, 132-33, 138-39, 152-53, 162-63, 173-74.

### D. Procedural Background

Plaintiffs brought this action on September 18, 2015. Dkt. No. 1. Upon consent, Plaintiff filed an Amended Complaint in December 2015, and a consolidated Second Amended Complaint in March 2016. Dkt. Nos. 16, 32. The SAC alleges fourteen causes of action, including: consumer fraud under the anti-fraud statutes of six states; false advertising under California and New York law; breach of express warranty; breach of implied warranty; and violations of the Magnusson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. SAC ¶¶ 198-371. Plaintiffs seek compensatory and punitive damages, along with injunctive and declaratory relief. BMW NA subsequently filed a motion to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6).

## II. LEGAL STANDARD

In considering a Rule 12(b)(6) motion to dismiss on the pleadings, the Court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id. However, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

7

For allegations sounding in fraud, Rule 9(b) imposes a heightened pleading standard. "A party must state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## III. ANALYSIS

### A. Article III Standing

Defendant first argues that all claims should be dismissed because Plaintiffs lack Article III standing. The Court disagrees.

To establish Article III standing, a plaintiff must allege: (1) an injury in fact; (2) causation; and (3) redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). BMW NA argues that Plaintiffs have failed to demonstrate the injury in fact requirement. Def.'s Br. at 9-11. An injury in fact must be "concrete, particularized, and actual or imminent." Clapper v. Amnesty Int'l USA, 133 S. Ct. 1138, 1147 (citations omitted). The injury required for standing purposes is distinct from damages under a particular theory of liability. See Braden v. Wal–Mart Stores, Inc., 588 F.3d 585, 591 (8th Cir. 2009) ("It is crucial ... not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive."); Cole v. General Motors Corp., 484 F.3d 717, 722–23 (5th Cir. 2007) ("Whether recovery for such a claim is permitted under governing law is a separate question; it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered."); Denney v. Deutsche Bank AG, 443 F.3d 253, 264–65 (2d Cir. 2006) ("[A]n injury-in-fact differs from a 'legal interest'; an injury-in-fact need not be capable of sustaining a valid cause of action under applicable tort law.").

8

Here, Plaintiffs have alleged injuries that have already occurred, as well as imminent future injury. Specifically, all Named Plaintiffs have alleged economic injury in the form of diminished resale value of their vehicles. In addition, Plaintiffs spent time taking their vehicles to BMW repair centers. Several Plaintiffs have also incurred out-of-pocket costs to purchase extra oil and replacement batteries. Accordingly, they have satisfied Article III's injury in fact requirement.

**B. Consumer Fraud**

1. <u>Nationwide Class</u>

BMW NA first asserts that Plaintiffs "cannot pursue claims on behalf of a nationwide class under the NJFCA" because the suit's sole connection to the forum is that BMW NA is located in New Jersey. Def.'s Br. at 11-16. Although it is unclear from its brief, BMW NA appears to make a predominance challenge under Fed. R. Civ. P. 23(b)(3). As such, the Court declines to dismiss the nationwide class allegations because addressing class certification issues prior to a Rule 23 Motion is premature.

Generally, "'[d]ismissal of class claims prior to discovery and a motion to certify the class by plaintiff is the exception rather than the rule,' and is almost uniformly disfavored." <u>McGuire v. BMW of North Am., LLC</u>, 2014 WL 2566132 at *4 (D.N.J. June 6, 2014) (citing <u>Durso v. Samsung Elecs. Am., Inc.</u>, No. 12-05352, 2013 WL 5947005 (D.N.J. Nov. 6, 2013)). Until a class is certified, the claims of each Named Plaintiff in a putative class action must be examined on an individual basis. The Court cannot do so for all Plaintiffs here.

Without referencing Rule 23, BMW NA more broadly asks the Court to conclude that the NJFCA cannot apply "nationwide" because "[c]onflicts exist between the NJCFA and the consumer-protection laws of other states." Def.'s Br. at 12. However, such a choice of law

9

analysis requires facts not before the Court.<sup>5</sup> See Maniscalco v. Brother Int'l (USA) Corp., 793 F. Supp. 2d 696, 709 F. 3d 202, 206-07 (3d Cir. 2013) (undertaking a choice of law analysis at the summary judgment stage); In re Samsung, No. 07-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009) (deferring choice of law issues to class certification stage where facts were insufficient on a motion to dismiss); In re Mercedes–Benz Tele Aid Contract Litig., 257 F.R.D. 46, 55 (D.N.J. 2009) (same). compare Cooper v. Samsung Elecs. Am., Inc. 374 F. App'x 250, 255 (3d Cir. 2010) (resolving choice of law issues at the motion to dismiss stage appropriate only where the district court has enough factual information).

BMW NA argues that courts in this district have engaged in a choice of law analysis to dismiss NJCFA claims at a motion to dismiss stage. Def.'s Reply at 4-5 (citing Block v. Jaguar Land Rover North Am., LLC, No. 15-5957, 2016 WL 3032682, at *3 (D.N.J. May 26, 2016)). However, in Block, Defendants sought dismissal of one individual defendant's claims. That is not

---

[5] Federal courts sitting in diversity must apply the choice of law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). New Jersey courts have adopted a two-part "most significant relationship" test to determine which set of laws should apply. Arlandson v. Hartz Mountain Corp., 792 F. Supp. 2d 691, 699 (D.N.J. 2011). The court must first determine whether there is an actual conflict between the laws of interested states; if not, the forum state law applies. If there is a conflict, then the court must weigh the factors set out in the Restatement to identify which state has the "most significant relationship" to the claim. Id. These factors include: (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicile, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant. Restatement (Second) of Conflict of Laws § 148. Assuming that a conflict exists here between the laws of different states, the appropriate analysis on a motion to dismiss would be to examine which jurisdiction's laws applies to each of the Named Plaintiffs. No such analysis was undertaken by Defendant here. In addition, facts before the Court do not permit a thorough analysis of the Restatement factors for all Plaintiffs. For instance, several Named Plaintiffs reside in a different state from where they purchased their Class Vehicles. Limited discovery will be needed to assess Restatement factors such as the location where Plaintiff received representations and where Plaintiff is to render performance.

the case here where Defendants seek dismissal against eight different individuals with varyingly detailed allegations before the Court. Accordingly, the Court will not dismiss Plaintiffs' class allegations pursuant to NJFCA at this time.

2. Loss Allegations

BMW NA next asserts that Plaintiffs statutory consumer fraud allegations are deficient on the merits because they fail to allege loss. The Court is not persuaded.

Generally, a claim for consumer fraud requires allegations of loss. See Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009) (the elements of a New Jersey Consumer Fraud Act claim are (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and the ascertainable loss).[6] Under New Jersey law, an "ascertainable loss" may consist of out-of-pocket expenses or "a demonstration of loss in value" that is "quantifiable or measurable." Thiedemann v. Mercedes–Benz U.S.A., LLC, 183 N.J. 234, 248 (2005). Other states require less. See, e.g. Meyer, 45 Cal. 4th at 642 ("[W]e interpret broadly . . . that a consumer suffers any damage to include the infringement of any legal right as defined by section 1770.").

Here, Plaintiffs have adequately alleged damages. Namely, they allege that their vehicles are worth less as a result of the Oil Consumption Defect and the Battery Defect. This is a quantifiable loss. See Marcus v. BMW of North Am. No. 08-5859, 2010 WL 4853308 at *11

---

[6] See Cal. Bus. & Prof. Code §§ 17204, 17535 (permits claims by "any person who has suffered injury in fact and has lost money or property as a result of such unfair competition"); Meyer v. Sprint Spectrum L.P., 45 Cal. 4th 634 (2009) ("[I]n order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result."); Frank v. DaimlerChrysler Corp., 734 N.Y.S. 2d 98 (N.Y. App. Div. 2002) ("plaintiffs must plead actual injuries or damages, resulting from defendants' conduct, as an essential element of . . . [New York] GBL §§ 349 and 350 . . .") (citations omitted); Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc., 64 Wash. App. 553, 563-64 (Wash. Ct. App. 1992) (Washington Consumer Protection Act requires "some evidence, however slight, to show injury to the claimants' business or property"); Finstad v. Washburn University of Topeka, 252 Kan. 465, 469 (1993) ("If the students are not aggrieved by the violation, then they do not have a remedy under K.S.A. 50–634(b).").

11

(D.N.J. Nov. 19, 2010) (plaintiffs alleged loss where "the class members got less than what they expected" despite being provided free replacement parts), rev'd on other grounds, Marcus v. BMW of North Am., 687 F.3d 583 (3d Cir. 2012). A dealer has even offered Plaintiff Bengulescu "half of what he had paid for the vehicle four months earlier." SAC ¶ 114. In addition, some Plaintiffs have alleged out-of-pocket expenses for oil and batteries. Id. ¶¶ 136, 158, 168. Accordingly, Plaintiffs' consumer fraud claims cannot be dismissed for failure to allege loss at this time.

### 3. Breach of Warranty

1. Nationwide Class

BMW NA first argues that Plaintiffs' breach of warranty claims must be "dismissed" because they "cannot pursue be a nationwide breach of warranty class action under New Jersey law or, indeed, the law of any one particular state" since "the UCC is *not* uniform." Def.'s Br. at 15-17 (emphasis in original). Like their argument for dismissal of Plaintiffs' nationwide class consumer fraud allegations, this again appears to be a predominance argument against class certification under Rule 23(b)(3). For the reasons stated above, the Court declines to dismiss the nationwide class allegations at this stage. See supra Part III, B, 1.

2. Breach of Express Warranty

BMW NA argues that Plaintiffs' breach of express warranty claims must be dismissed because Defendant fulfilled its obligations under the warranty program "by replacing batteries and putting oil in [Plaintiffs] vehicles." Def.'s Br. at 19. Plaintiffs reply that providing replacement parts was not enough to satisfy BMW's warranty obligations. Specifically, they allege that Defendant merely "masked" the Oil Consumption and Battery Defects by refilling engine oil and replacing batteries, and "did not remedy the underlying defective components." Pls.' Br. at 39. Defendants allegedly continued to breach the Warranty "[e]ach time its authorized service

12

representatives failed to properly repair, replace, or adjust malfunctioning Class Vehicles to a non-defective state." SAC ¶ 220.

The plain language of the Warranty does not resolve whether refilling oil and replacing batteries satisfied BMW's obligations. The Warranty merely states that it protects "against defects in materials or workmanship." Id. ¶ 87. Upon receiving notice of a defect, an authorized BMW dealership "will, without charge for parts or labor, either repair or replace the defective part[s] using new or authorized remanufactured parts." Id. Accordingly, whether Defendant fulfilled its responsibilities under the Warranty is a fact question. See Kuzian v. Electrolux Home Products, Inc., 937 F. Supp. 2d 599, 612 (D.N.J. 2013) (whether defendant "met the terms of the express warranty by providing 'repairs,' but not actually fixing the alleged defects, cannot be determined at this motion to dismiss stage"). Dismissal at this stage would be premature.

3. Breach of Implied Warranty

Generally, the implied warranty of merchantability warrants that "goods sold are fit for the ordinary purposes for which the goods are used." Nelson v. Nissan North Am., Inc., 894 F. Supp. 2d 558, 566 (D.N.J. 2012) (citing N.J.S.A. § 12A:1-314).[7] As applied to cars, "the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects [and, therefore,] where a car can provide safe, reliable

---

[7] See also Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc., 992 F. Supp. 2d 962, 979 (C.D. Cal. 2014) (under California law, the implied warranty ensures that goods "are fit for the ordinary purpose of which such goods are used"); Criscuolo v. Mauro Motors, 754 A. 2d 810, 816 (Conn. App. Ct. 2000) (under Connecticut law, implied warranty of merchantability holds merchants liable to the extent their goods fail to conform to ordinary purpose for which they are supposed to be used); AgriStor Leasing v. Meuli, 634 F. Supp. 1208, 1220 (D. Kan. 1986) (under Kansas law, "goods must at least be fit for the ordinary purpose for which they are intended"); Reynolds Metals Co. v. Alcan, Inc., No. 04-175, 2005 WL 2789050 at *2 (W.D. Wash. Oct. 26, 2005) ("Washington's implied warranty of merchantability is based on "the concept that goods be reasonably fit for their usual, intended purpose, i.e., reasonably safe when put to their ordinary use and reasonably capable of performing their ordinary functions.").

transportation[,] it is generally considered merchantable." Henderson v. Volvo Cars of N. Am. LLC, 2010 WL 2925913, at *9 (D.N.J. July 21, 2010) (quoting Carlson v. Gen. Motors Corp., 883 F.2d 287, 297 (4th Cir. 1989)).

BMW NA asserts that the implied warranty claims must be dismissed because the Class Vehicles were still merchantable despite the alleged defects because they continued to perform "their ordinary function of providing transportation." Def.'s Br. at 19. However, Plaintiffs have alleged that the Oil Consumption Defect is likely to cause catastrophic engine failure, which may cause a life-threatening accident. SAC ¶ 70. Plaintiffs allege that the defects pose an unreasonable safety hazard. Id. ¶ 69. Indeed, multiple Named Plaintiffs have experienced severe mechanical failures, including (1) vehicle break down one day after purchase, (2) a "drivetrain malfunction" that resulted in reduced acceleration and dynamic stability control malfunction, and (3) vehicle failure when a battery could not accept a full charge. See id. ¶¶ 136, 149, 159. Viewing the allegations in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have stated a claim for breach of implied warranty.

    4. Magnuson-Moss Breach of Warranty

The MMWA allows "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation . . . under a written warranty, implied warranty, or service contract" to bring an action in federal court. 15 U.S.C. § 2310(d)(1). In order to state a claim under the MMWA, a plaintiff must first establish a claim under an applicable state law. Cooper v. Samsung Elecs Am., Inc., No. 07-3853, 2008 WL 4513924, at *6 (D.N.J. Sept. 30, 2008), aff'd, 374 F. App'x 250 (3d Cir. 2010). Here, Plaintiffs have stated claims for breach of express warranty and implied warranty. Therefore, the MMWA count cannot be dismissed at this time.

## IV. CONCLUSION

For the reasons set forth above, BMW NA's motion to dismiss, Dkt. No. 35, is **DENIED**.

An appropriate Order accompanies this Opinion.

**Dated: December 1, 2016**

>*/s Madeline Cox Arleo*
>**Hon. Madeline Cox Arleo**
>**UNITED STATES DISTRICT JUDGE**