## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## NEWARK DIVISION

| | |
|---|---|
| JOON BANG, RAZVAN VICTOR BENGULESCU, GERALD BEZEMS, SCOTT CROCKETT, RIFAT GORENER, CHRISTOPHER LESIEUR, JEFFREY LAMKE, LAWRENCE MARCUS, THOMAS RUSSELL, and MIKHAIL SULEYMANOV, individually and on behalf of all others similarly situated, | Case No. 2:15-cv-6945-MCA-SCM <br><br> CLASS ACTION |
| Plaintiffs, | |
| vs. | |
| BMW OF NORTH AMERICA, LLC, BAVARIAN MOTOR WORKS, and DOES 1 through 10, inclusive, | |
| Defendants. | |

## STIPULATED ORDER ESTABLISHING
## DOCUMENT DISCOVERY PROTOCOL

Pursuant to the following agreement of counsel for Plaintiffs and counsel for BMW of North America, LLC ("BMW NA"), the Court hereby enters this Order regarding the protocol for document discovery.

It is therefore, ORDERED as follows:

1.    **Definitions and Scope.**  The following protocol shall control the production of discoverable documents and electronically stored information (collectively, "Documents"), when production commences.

a) As used in this protocol, the term Document(s) shall have the same meaning as that used in Rule 34 of the Federal Rules of Civil Procedure and, includes, without limitation, all electronically stored information ("ESI").

b) The phrase "Producing Party" shall mean the party producing Documents in response to any request for production of Documents pursuant to Rule 34(a) of the Federal Rules of Civil Procedure.

c) The phrase "Receiving Party" shall mean the party receiving production of Documents in response to any request for production of document(s) pursuant to Rule 34(a) of the Federal Rules of Civil Procedure.

d) The phrase "responsive and discoverable" information or Documents shall mean information that is both within the scope of a party's discovery request and within the scope of discovery permitted by Rule 26 of the Federal Rules of Civil Procedure.

2. **Responding to Discovery Requests.**

a) In responses to discovery requests, each responding party will disclose any sources of ESI that have not been searched, and the reasons why they were not searched, if those ESI sources are reasonably likely to contain responsive and discoverable documents or information not otherwise available from other sources.

b) In responding to discovery requests from BMW NA, each Plaintiff shall search for responsive and discoverable information in their possession, custody or control. For ESI, the search shall include the data and files on their computers and any storage media that may contain discoverable information. The search shall also include data and files not on their computers but to which they have custody or control, such as e-mail, social networking sites, and

2

blogs.  Plaintiffs shall not be required to search backup files absent a showing of good cause by BMW NA.

        c)    In responding to discovery requests from Plaintiffs, BMW NA shall search for responsive and discoverable information in its possession, custody, or control by interviewing all persons reasonably likely to have knowledge of such information and examining the storage locations these persons identify as reasonably likely to contain relevant Documents, including (as examples for ESI) network servers, work stations, e-mail, local files, relevant databases, storage media, and files in work group or departmental folders.  BMW NA shall not be required to search server backup tapes absent a showing of good cause by Plaintiffs, but shall be required to preserve this material.

        d)    The parties do not at this time anticipate the need to attempt discovery of deleted or residual data.  Absent a further showing of good cause, the parties are not required to use forensic data preservation or collection methods.

    3.    **Commencement of Production.**  Production of Documents shall proceed at such time, place, and in such sequence as may be agreed to by the Producing Party and the Receiving Party.  The parties acknowledge that discovery in this case will encompass ESI and that the collection, processing, filtering, review, and production of such materials is a time-consuming process.  In the event agreement cannot be reached, the Producing Party and the Receiving Party shall submit their respective positions to the Court. in accordance with Local Civil Rule 37.1.

    4.    **General Format of Production.**  Subject to the provisions of paragraph 5(e), Documents that are produced in these proceedings, whether originally stored in paper or electronic form, shall be produced in electronic image form in the manner as described below. The Parties reserve the right to request an alternative format or method of production be used for

Documents not reasonably usable if produced in the format specified below.  In that event, the Receiving Party and the Producing Party will meet and confer to discuss alternative production requirements, formats, and/or methods.

     5.     **Production Format.**  Documents shall be produced according to the following formats:

     a)     **Paper Documents.**  The parties shall produce Documents maintained in paper format as scanned, black and white images at 300 d.p.i. or greater resolution, in a Group IV compression single-page Tagged Image File Format ("TIFFs" or ".tif format") and reflect the full and complete information contained in the original Document.  Documents produced shall bear Bates production numbers and confidentiality designations as described below.  To the extent that documents contain color marking(s) that are essential to decipher the documents meaning, context, or content, said documents should be produced as scanned, color images at 300 d.p.i. or greater resolution, in a Group IV compression single-page Tagged Image File Format ("TIFFs" or ".tif format").  Upon written request by the Requesting Party, the Producing Party shall take good faith measures to honor requests to produce color images where the Requesting Party believes in good faith that color is important to interpret the document.  The Parties agree to meet and confer concerning any disputes over such requests.  The Parties reserve the right to revisit their agreement if BMW NA's production reveals a large number of documents that appear to be in color where color appears to be important to interpret the document.

     (i)     The Parties will use best efforts to unitize documents (i.e. distinct documents should not be merged into a single record, and a single document should not be split into multiple records), and maintain document relationships (i.e. attachment status).

b)   **Electronically Stored Information.** Except as provided in Paragraph 5(e) below, Document images shall be generated from electronic Documents in a Group IV compression single-page "TIFF" image at 300 dpi (image file name to match bates number) that reflects the full and complete information contained on the original document, together with a load file or functional equivalent that contains the metadata as set forth below. The Producing Party shall also produce the extracted text (.txt) file taken from the native documents before the TIFF image is created; the text file for each Document produced must be tied to the TIFF image by the Document's first Bates number. In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document. When producing a document in redacted form, the Producing Party shall maintain a copy of the original document with the document's original metadata intact. The producing party may then produce the TIFF of the redacted document along with the unaltered Metadata as listed in Paragraph 5(c) below. The failure to withhold such text for a redacted document by a Producing Party shall not be deemed a waiver of the privilege associated with that Document.

c)   **Metadata for ESI.** The Producing Party shall produce in the load file for each production the metadata information described in Appendix A. The metadata must be produced in the following format: (1) an OpticonTM or IPRO® "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file; and (2) a Data Load File containing Concordance® delimited text that will populate fields in a searchable flat database environment, containing one line for each document and each of the applicable fields as described in Appendix A.

Unless otherwise specified, by producing metadata, each Party affirms that such metadata came from its records, with the exception of vendor entered source/Custodian and

5

document/production number fields.  Nothing in this stipulation requires a Party to manually populate a metadata field (other than Custodian and MD5Hash) if such fields cannot be extracted from a document, provided that the parties agree to comply with reasonable requests for metadata that cannot be extracted from a document.

       d)    Any document attached or linked to any ESI will be produced as part of the same document production as its parent document and will be bates numbered consecutively following the parent document.  Embedded files shall be treated as though they were separate files, except that the Bates range of the parent document and the documents embedded therein shall be identified in the same manner as the Bates range of an e-mail attachment.  Nothing in this provision shall be construed to prevent withholding a document from production based on privilege or it being non-responsive.

       e)    **Native Format Documents.**  The parties recognize that it may be appropriate for certain Documents to be produced in Native Format. The Producing Party shall produce all non-redacted Microsoft PowerPoint, Microsoft Excel, Microsoft Word, and non-printable files in native format.  Native files are to be produced in a separate folder on the production media.  The unitization file/load file shall contain a field that identifies the file path of the native file on the production media corresponding to each document.  All images of Microsoft Word documents and PowerPoint presentations shall be processed to show and reveal all comments, revision marks, speaker notes, or other user-created data that the source application can display to a user, unless there is an agreement to the contrary.  For non-redacted Microsoft PowerPoint and Microsoft Word files, the Parties shall produce the Native file and Bates-stamped TIFF images.  For non-redacted Microsoft Excel documents and nonprintable files shall be produced in Native format only with one page placeholder TIFF images that show

(1) the name of the native file, (2) a unique Bates number, and (3) a Confidentiality Designation. The Receiving Party may also request that the Producing Party produce additional file types of electronic Documents in Native Format where the converted image format distorts or causes the information to be improperly displayed.  Such Documents shall be listed by the Receiving Party or a general agreement may be reached after meeting and conferring.  Prior to producing any Protected Information as defined in the Protective Order entered herein in Native Format, the Producing Party and the Receiving Party shall meet and confer to establish additional procedures, to the extent necessary, for the protection of the native information.

        (i)     The Requesting Party would identify in writing those additional files for which they seek the native format.

        (ii)    Within fourteen days of receiving such a request, the Producing Party will respond in writing, setting forth its position on the production of the requested native format files.

        (iii)   If the Producing Party agrees to produce the requested native format Documents, it shall produce the Documents within four weeks from the date of the request.  Additional time will be provided to the Producing Party if Producing Party can show a reasonable need due to the volume and the nature of the request.

        (iv)   If the parties are unable to agree on the production of the requested Documents in native format, the parties will submit the matter to the Court in accordance with Local Civil Rule 37.1(a).

        f)     Digital photographs will be produced as full color image files in .JPG format at their original resolution with Bates numbers electronically burned or branded onto them.

g)      **Text Files.**  For each Document, a single text file shall be provided along with the image files and metadata discussed herein.  The text file name shall be the same as the Bates number of the first page of the Document.  Files names shall not have any special characters or embedded spaces.

(i)      Electronic text must be extracted directly from the native electronic file unless the document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (*e.g.*, non-searchable PDFs).

(ii)      Paper/scanned Documents shall also be produced with the associated Optical Character Recognition ("OCR") text as a text (.txt) file. The Producing Party shall also produce one OCR text (.txt) file per Document, named with the Bates number of the first page of the document to which it relates (the only difference being the file extension).  In the event a Document is redacted, the Producing Party shall withhold the redacted text for that Document.  The failure to withhold such text for a redacted document by a Producing Party shall not be deemed a waiver of the privilege associated with that Document.

(iii)      Paper/scanned document productions shall be produced with a load file containing the Bates number range for each document produced.

h)      **Document Unitization.**  For files produced as TIFF images, each page of a document shall be electronically saved as an image file.  If a document consists of more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image files.  The parties shall produce a unitization file ("load file") for all produced documents in accordance with the following formatting:

**OCR and Extracted Text Files (.TXT Files)**

- Single text file per document containing all of the document's pages

8

- Filenames should be in the form:

  <Bates num>.txt

  Where <Bates num> is the Bates number of the first page in the document.

- Text must be encoded in UTF-8.

**Image Files**

- Single page per image

- Filenames should be in the form:

  <Bates num>.<ext> where <Bates num> is the Bates number of the page, and

  <ext> is the appropriate extension for the image format (.jpg, .tif).

**Index Files**

- "Concordance Default" delimited text file utilizing the following characters:

  o The "comma" delimiter is "¶" (020)

  o The "quote" delimiter is "þ" (254)

  o The "new line" delimiter is "®" (174)

- First line must contain the column/field names (set forth in Appendix A)

- Every row must have the same number of columns/fields (empty values are

  acceptable)

- Text must be encoded in UTF-8

The parties agree to meet and confer to discuss all unitization file/load file specifications

if needed.

i)   **Production Media.**  A Producing Party shall produce Documents on a CD-ROM,

DVD, external hard drive, or such other readily accessible computer or electronic media as the

Producing Party and the Receiving Party may hereafter agree upon (the "Production Media").

9

Information that shall be identified on the face of the Production Media shall include: (1) the

production date, and (2) the confidentiality notation required by the Protective Order entered in

this case, if the media contains Confidential Information, as defined in the Protective Order.  The

face of the Production Media shall also contain the Bates Number range(s) of the Documents on

the Production Media, and where not practicable to do so, may be provided in an accompanying

letter.  If any item of ESI produced is known to have any physical defect, electronic defect, or

damaged data, or is known to be infected with any virus or other harmful software of any kind, it

should be so labeled, indicating that appropriate care should be taken during its examination.

           (i)      **Encryption.**  To maximize the security of information in transit,

any media on which Documents are produced may be encrypted by the Producing Party.  In such

cases, the Producing Party shall transmit the encryption key or password to the Receiving

Party(ies), under separate cover.

           j)      **Duplicates.**  A Producing Party who has more than one identical copy of

an electronic document (i.e., the documents are actual duplicates) need only produce a single

copy of that document.  A Producing Party need not produce the same electronically stored

information in more than one form.  A Producing Party may de-duplicate its document

population across the entirety of the information collected, or by custodian, at its sole discretion.

The parties are not required to produce multiple instances of an electronic message sent to

multiple recipients, provided that all of the recipients (including "blind carbon copy" recipients)

can be identified from Document(s) or their related metadata.  Where a subsequent electronic

mail message contains all of the portions of an earlier message produced pursuant to this

Protocol, it is not necessary for a Producing Party to produce the earlier message, provided that

all of the recipients (including "blind carbon copy" recipients) can be identified from

Document(s) or their related metadata. If the subsequent inclusive message does not include an attachment to an earlier message, the attachment must also be produced.

       k)    **Bates Numbering.** Each Producing Party shall Bates number its production(s) as follows:

       (i)    **Document Images.** Each page of a produced Document shall have a legible, unique page identifier ("Bates Number") placed on the image at a location that does not unreasonably obliterate, conceal, or interfere with any information from the source document. The Bates Number shall contain a two to five letter prefix associated with the Producing Party's name followed by numbers (e.g., ABCDE00000001). Any confidentiality legend shall be placed on each document's image at a location that does not unreasonably obliterate or obscure any information from the source document. Said confidentiality legend shall be located at a place sufficiently close to the Bates Number in order to allow the reader of said document to readily identify the nature of the asserted confidentiality.

      (ii)    **Native Format Documents.** In the event Native Format Documents are produced, no Bates Number, confidentiality legend or internal tracking number should be added to the content of the Native Document. Until such time as the Producing Party and the Receiving Party meet and confer and address procedures for maintaining the confidentiality of Native Format Documents(s) as required in Paragraph (e) above, all Native Format files shall remain designated as "Confidential" as set forth in the Protective Order.

      (iii)    **File Naming Conventions.**

      (1)    Document Images. Each Document Image shall be named with the unique Bates Number for each page of document.

(2)     Native Format Documents.  Native Format Documents shall be named by Bates Number and file extension that correspond to the original native format.

l)     **Non-English Documents.**  The Parties shall produce any English translations of Non-English documents made in the normal course of business.  The Parties are not required to produce documents translated at the request of counsel.  The Parties shall meet and confer concerning procedures for using documents translated at the request of counsel in depositions and at trial.  In the event the Parties cannot reach agreement, the matter may be submitted to the Court for determination.

m)     **Databases.**  To the extent discovery requires production of electronic information contained in a database, the Producing Party shall not produce the database itself but instead produce reports or selected data extracts.  Production may be in image format or as a comma separated value (.csv) text file. The Receiving Party may make reasonable requests for additional information to explain the database scheme, codes, and/or abbreviations or to request the data in an alternative format, which will be provided within 14 days.  The Receiving Party may also request that the Producing Party provide the database query used relevant to such production.  Such query information shall be provided within 14 days of such request.

6.     **Privilege Logs.**  A Producing Party will produce a separate privilege log for each production within 30 days after the production.  When there is a chain of privileged e-mails, the Producing Party need only include one entry on the privilege log for the entire e-mail chain, and need not log each e-mail contained in the chain separately.  The Producing Party and the Receiving Party may modify the deadlines for production of privilege logs by agreement.  A block entry log shall be made for all such email chains, including the names of all each Author, Recipient, CC and BCC on any email in the string, which shall correspond with the persons

12

identified as each Author, Recipient, CC and BCC on any part of that email. The block entry log should also include each email subject line used in any email in the chain, except to the extent the subject line tends to reveal the substance of the privileged conversation. If the subject line information is withheld because it "tends to reveal the substance of the privileged conversation", then an entry should be placed on the log identifying that such information was withheld, the grounds for withholding said information, and which email with the chain it relates to.

       7.     **Discovery and Admissibility.** Nothing herein shall be construed to affect the discoverability or admissibility of any document or data. All objections to the discoverability or admissibility of any document or data are preserved and may be asserted at any time.

       8.     **Accessibility.** A party shall give advance written notice to the opposing parties in the event it does not intend to retain any pertinent current or legacy system software or hardware, including application programs and utilities, that may be necessary to access, process, manipulate, print, etc., ESI likely to contain relevant information not previously produced and not available from other sources.

       9.     **Inadvertent Production of Privileged Materials.** If a Producing Party claims that information produced in discovery is subject to a claim of privilege or of protection as trial preparation material, the Producing Party may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim after completing the Local Civil Rule 37.1(a) procedure. The producing party must preserve the information until the claim is resolved.

10.   **Other Orders.**  The terms of any Protective Order entered in this action shall remain in full force and effect and nothing contained herein is to be construed as a modification of the terms of any such order(s).

IT IS SO STIPULATED.

Entered:  3 / 3 / 17

Honorable Steve Mannion
United States Magistrate Judge

**Agreed to by:**

| /s/ Matthew D. Schelkopf | /s/ Daniel Z. Rivlin |
|---|---|
| Matthew D. Schelkopf | Rosemary J. Bruno |
| Joseph G. Sauder | Christopher J. Dalton |
| Joseph B. Kenney | Daniel Z. Rivlin |
| MCCUNE WRIGHT AREVALO, LLP | Lauren A. Woods |
| 555 Lancaster Avenue | BUCHANAN INGERSOLL & ROONEY PC |
| Berwyn, Pennsylvania 19312 | 550 Broad Street, Suite 810 |
| Telephone: (610) 200-0581 | Newark, New Jersey 07102 |
| Facsimile: (909) 557-1275 | Telephone: (973) 273-9800 |
| MDS@mccunewright.com | Facsimile: (973) 273-9430 |
| JGS@mccunewright.com | rosemary.bruno@bipc.com |
| JBK@mccunewright.com | christopher.dalton@bipc.com |
| | daniel.rivlin@bipc.com |
| Attorneys for Plaintiffs, | lauren.woods@bipc.com |
| Joon Bang, Razvan Victor Bengulescu, | |
| Gerald Bezems, Scott Crockett, Rifat | Attorneys for Defendant, |
| Gorener, Christopher LeSieur, Lawrence | BMW of North America, LLC |
| Marcus, and Mikhail Suleymanov | |
| | March 2, 2017 |
| March 2, 2017 | |

14