

McCUNE · WRIGHT · AREVALO
ATTORNEYS AT LAW

September 13, 2017

Matthew D. Schelkopf
mds@mccunewright.com
Phone: 610.200.0581
Fax: 610.717.6426

Honorable Steven C. Mannion, U.S.M.J.
United States District Court
U.S. Post Office & Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re:   *Bang, et al. v. BMW of North America, LLC, et al.*
      Case No. 2:15-cv-06945-MCA-SCM

Dear Judge Mannion:

Plaintiffs submit this letter separately to update the Court on the current status of their discovery dispute and to seek a ruling from Your Honor.

### I.   **Plaintiffs' Unsuccessful Efforts to Prepare a Joint Submission re Discovery Disputes.**

On August 22, 2017, Plaintiffs' counsel emailed to counsel for BMW a Draft Joint Discovery Letter re Discovery setting forth Plaintiffs' positions on various discovery disputes and requesting that counsel for BMW provide BMW's position with regard to such discovery issues, in order to comply with Local Rule 37.1(a) and the Court's Pretrial Discovery Order.[1] On August 30, 2017, Plaintiffs' counsel emailed counsel for BMW again requesting that counsel for BMW provide BMW's position with regard to the specified discovery issues set forth in the draft of August 22, 2017.[2] On September 7, 2017, Plaintiffs' counsel emailed counsel for BMW for the third time requesting information as to the status of BMW's response to the draft Joint Discovery Letter.[3] On September 8, 2017, Plaintiffs' counsel emailed counsel for BMW stating that the no response had been received with regard t Plaintiffs' circulation of the draft Joint Discovery Letter, first circulated on August 22, and stating that if BMW did not respond by the close of business on September 12, 2017, Plaintiffs would have no choice but to proceed by way of filing a separate Letter re Discovery Dispute to the Court on September 13, 2017.[4] On September 9, 2017, counsel for BMW responded for the first time stating that "We will be talking to BMW Monday or Tuesday at the latest with regard to your letter/emails. I will update you thereafter as

---

[1] *See* Plaintiffs' Correspondence dated August 22, 2017, attached hereto as Exhibit H.
[2] *See* Plaintiffs' Correspondence dated August 30, 2017, attached hereto as Exhibit I.
[3] *See* Plaintiffs' Correspondence dated September 7, 2017, attached hereto as Exhibit J.
[4] *See* Plaintiffs' Correspondence dated September 8, 2017, attached hereto as Exhibit K.

to the responses."[5]  On September 12, 2017, counsel for Defendant emailed Plaintiffs' counsel stating that they would provide Defendant's position on the discovery issues, but that the person at BMW with whom counsel needed to speak would be out of the office until Monday, September 18.[6]  Plaintiffs' counsel responded on that same date that because Plaintiffs had first circulated the draft Joint Letter re Discovery on August 22, 2017, and that this is the first time that counsel responded to Plaintiffs' August 22 request for Defendant's position and, therefore, were not willing to delay submitting the matter to the court for yet another week or more. Plaintiffs' counsel, therefore, are proceeding by way of filing their Letter re Discovery Dispute separately with the Court.

## II.     Plaintiffs' Summary of Discovery Dispute.

By way of background, on June 21, 2017 (Doc. No. 72)[7], the Parties submitted a joint letter to the Court in an effort to outline and seek resolution of certain discovery disputes pursuant to Local Rule 37.1(a) and this Court's Pretrial Scheduling Order.  On June 26, 2017, the parties discussed the discovery issues with Your Honor during a telephonic status conference. The summary of that discussion and the agreement of the parties was documented that same day by correspondence from Plaintiffs' counsel to defense counsel.[8]

Plaintiffs suggested a formal ruling on BMW's outstanding discovery could be postponed until after mediation, so long as BMW agreed (as it did) that it would not object to a request by Plaintiffs to extend the deadline for fact discovery in the event mediation was unsuccessful, and, provided that BMW produced (before mediation) three categories of documents:

(1) Nationwide sales of Class Vehicles by state and year (As BMW has already provided this for seven states [BMWNA BANG 010887-010888], it should be easy to simply provide this for all states);

(2) BMW's documents showing its root cause analysis and conclusions relating to the alleged oil consumption and battery defects in the class vehicles; and

(3) BMW'S documents showing its consideration, issuance, and implementation of the N63 Customer Care Package (bulletin B001314), and the technical service bulletins referenced in footnote 3 of the Consolidated Second Amended Complaint (SIB-11-08-12, SIB-11-07-12, SIB-11-01-13, and SIB-B61-30-14).

Following the parties' call with Court, BMW did produce some documents in each of these three categories, although Plaintiffs maintain that BMW's production in response to categories 2 and 3 above has been far short of what BMW has in these areas, and what Plaintiffs expect.[9]  BMW has produced no internal communications or memoranda of any kind relating to the underlying issues with the Class Vehicles alleged in the Complaint.  BMW has, to date,

---

[5] *See* Defendant's Correspondence dated September 8, 2017, attached hereto as Exhibit L.
[6] *See* Defendant's Correspondence dated September 8, 2017, attached hereto as Exhibit M.
[7] The exhibits referenced in the June 21, 2017 (Doc. No. 72) were inadvertently not filed with the letter.  As a result, the parties attach hereto the Exhibits to the June 21, 2017 (Doc. No. 72) letter as Exhibits A-F.
[8] See Plaintiffs' Correspondence dated June 26, 2017, attached hereto as Exhibit G.
[9] See Exhibit G.

merely produced documents that, other than sales data, were already publicly available and represent BMW's public positions and contentions regarding the alleged defects at issue, with none of BMW's internal communications or analysis preceding those public announcements and bulletins. Moreover and regardless, Plaintiffs never agreed to waive the issues raised in the June 21 joint letter, but only to postpone their consideration pending mediation. Now that the parties have begun mediating (and will continue to do so in good faith) but have not resolved this case, Plaintiffs intend to move ahead with all due speed in discovery. Thus, Plaintiffs now seek guidance and direction from the Court on BMW's deficient discovery responses and improper objections as outlined in the joint letter.

Unfortunately, Plaintiffs are unable to briefly summarize the outstanding discovery from BMW because BMW's responses to *all* of Plaintiffs' First Interrogatories and Request for Production are deficient, in whole or in part. However, the following outstanding discovery is particularly concerning to Plaintiffs because of its fundamental significance in understanding and establishing the claims and defenses of the parties. Plaintiffs have received no interrogatory responses or documents on the following topics, despite having served discovery seeking this information over seven months ago:

- Documents concerning any root cause analysis, testing and/or investigation conducted by BMW or on its behalf related to the issues of engine oil consumption, engine oil leakage or premature battery failure in Class Vehicles; such documents would include BMW's internal communications and would presumably identify the key individuals involved within BMW in analyzing these issues that have caused BMW to issue bulletins to its dealers and additional incentives to its customers (Exhibit C, RFPD Nos. 2, 4, 35 and 36);

- Details regarding the time period of the investigations or analyses and persons in charge of such investigations for each team, group, or task force that has investigated possible elevated engine oil consumption, battery drain, and/or premature battery replacement (Exhibit B, Interrogatory Nos. 10 and 11);

- Documents and communications regarding changes, revisions, or modifications to the N63 engines and/or components related to the Class Vehicles to address issues of engine oil consumption, engine oil leakage, engine oil maintenance needs, premature battery failure, or battery replacement (Exhibit C, RFPD Nos. 8, 9, 23 and 37);

- Documents and communications to memorialize, summarize, or discuss any strategies to address issues of engine oil consumption, engine oil leakage, engine oil maintenance needs, premature battery failure, or battery replacement (Exhibit C, RFPD No. 37).

One especially illuminating example of BMW's failure to respond to discovery relates to Plaintiffs' request for BMW documents showing its root cause analysis and conclusions relating to the alleged oil consumption in the Class Vehicles. Plaintiffs allege that the Class Vehicles consume excessive amounts of oil due to a defect in the N63 engine. Prior to the filing of Plaintiffs' lawsuit, BMW issued Technical Service Bulletins ("TSBs") to BMW dealers and service providers addressing the issue of oil consumption in the Class Vehicles. In the TSBs, BMW acknowledges that "customers . . . may complain that the engine's oil consumption is 'too

high.'" BMW maintains, as part of its defense to this case, that the oil consumption of the Class Vehicles is normal for engines fitted with a turbocharger and is not a result of a defect. BMW has taken the position that the only root cause documents in its possession are the actual TSBs. It is simply not plausible that a global automobile manufacturer such as BMW would issue a Technical Service Bulletin to all of its authorized dealers affecting hundreds of thousands of automobiles with first conducting and documenting extensive research and analysis into the problem being addressed. Plaintiffs simply seek the internal documents related to the root cause of the oil consumption in the Class Vehicles, BMW's investigation that led to its publicly stated conclusion as to root cause, and to BMW's subsequent TSB regarding oil consumption. Plaintiffs' requests are not overreaching and are specifically targeted to discover information relevant to the oil consumption and battery issues in the Class Vehicles.

Plaintiffs need resolution of the underlying discovery disputes so the case can be adequately prepared for trial. Without the types of discovery outlined above, Plaintiffs cannot complete meaningful depositions. Because the disputes have delayed the ability to start depositions, it is not reasonably possible to complete fact discovery under the current deadline of October 30, 2017. Accordingly, the parties jointly request that the discovery deadline be continued four months to February 26, 2018. As no further deadlines were set by the Court beyond the fact discovery deadline in its initial scheduling order, this extension would not require postponement of any other settings, hearings, or deadlines.

### III.   **Defendant BMW's Summary of Discovery Dispute.**

[Not provided.]

Plaintiffs' appreciate the Court's assistance in resolving this matter and are prepared to provide the Court with additional information, via telephone conference or otherwise, upon request.

              Respectfully submitted,
              MCCUNE WRIGHT AREVALO, LLP

              /s/ *Matthew D. Schelkopf*

              Matthew D. Schelkopf
              Liaison Counsel for Plaintiffs

cc: All Counsel of Record