# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOON BANG, RAZVAN VICTOR BENGULESCU, GERALD BEZEMS, SCOTT CROCKETT, RIFAT GORENER, CHRISTOPHER LESIEUR, LAWRENCE MARCUS, and MIKHAIL SULEYMANOV, individually and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br> vs.<br><br>BMW OF NORTH AMERICA, LLC, BAVARIAN MOTOR WORKS, and DOES 1 through 10, inclusive,<br><br>    Defendants. | No. 2:15-cv-6945 (MCA)(SCM)<br><br>**CLASS ACTION** |

---

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

---

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................1

II. FACTUAL BACKGROUND...................................................5

 A. Plaintiffs' Allegations and Pre-Litigation Investigation .....................5

 B. History of the Litigation .......................................................8

 C. Settlement ..................................................................11

 D. Terms of the Settlement Agreement ...............................12

  1. Reimbursement for Out of Pocket Costs for the Oil Consumption and Battery Discharge Issues ...........................12

  2. Complimentary Repairs and Services......................................13

  3. Engine Replacement ...............................................15

 E. Notification to Settlement Class Members .........................15

 F. Attorney's fees and Incentive Awards .............................17

 G. The Release ...............................................................18

III. ARGUMENT......................................................................18

 A. The Settlement Should Be Preliminarily Approved .........................20

 B. Certification of the Proposed Class for Purposes of Settlement Only Is Appropriate............................................22

  1. Numerosity under Rule 23(a)(1)...............................23

  2. Commonality under Rule 23(a)(2)..........................23

  3. Typicality under Rule 23(a)(3) ...............................25

  4. Adequacy of Representation under Rule 23(a)(4) ...............25

  5. The Requirements of Rule 23(b)(3) Are Met ...................27

C.      The Court Should Approve the Notice Plan ......................................30

D.      A Final Approval Hearing Should be Scheduled ..............................32

IV.     CONCLUSION................................................................................32

# TABLE OF AUTHORITIES

*Page*

*OTHER AUTHORITIES*

*Aetna UCR Litig.*,
  No. 07-3541-KSH, 2013 U.S. Dist. LEXIS 127691, at *44 (D.N.J.
  Aug. 30, 2013) ................................................................................21

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ............................................................... 22, 28

*Augustin v. Jablonsky*,
  461 F.3d 219 (2d Cir. 2006) ...........................................................30

*Barnes v. Am. Tobacco Co.*,
  161 F.3d 127 (3d Cir. 1998) ...........................................................25

*DeBoer v. Mellon Mortgage Co.*,
  64 F.3d 1171 (8th Cir. 1995) ..........................................................31

*Ehrheart v. Verizon Wireless*,
  609 F.3d 590 (3d Cir. 2010) ...........................................................32

*Fidel v. Farley*,
  534 F.3d 508 (6th Cir. 2008) ..........................................................31

*Gautreaux v. Pierce*,
  690 F.2d 616 (7th Cir. 1982) ..........................................................19

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
  525 Fed. Appx. 94 (3d Cir. 2013) ...................................................26

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .........................................................22

*Henderson v. Volvo Cars of N. Am., LLC*, ,
  No. 09-4146 (CCC), 2013 U.S. Dist. LEXIS 46291, at *12-13
  (D.N.J. Mar. 22, 2013) ................................................................. *passim*

*In re Cmty. Bank of N. Virginia*,
  622 F.3d 275 (3d Cir. 2010) ...........................................................26

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   Case No. 3:08-MD-01998, MDL No. 1998, 2009 WL 5184352,
   (W.D. Kentucky 2009) .........................................................................30

*In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ...................................................................22

*In re Ins. Brokerage Antitrust Litig.*,
   579 F.3d 241 (3d Cir. 2009) .................................................................28

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
   204 F.R.D. 330 (N.D. Ohio 2001).........................................................21

*In re Nat'l Football League Players' Concussion Injury Litig.*,
   301 F.R.D. 191, 198 (E.D. Pa. 2014) ........................................... 19, 20

*In re Prudential Ins. Co. Sales Litig.*,
   148 F.3d 283 (3d Cir. 1998) .................................................................23

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) .................................................................19

*Ins. Brokerage Antitrust Litig.*,
   297 F.R.D. 136 (D.N.J. 2013) ...................................................19, 20, 25

*Jones v. Commerce Bancorp, Inc.*,
   No. 05-5600 (RBK), 2007 U.S. Dist. LEXIS 52144, at *5 (D.N.J.
   July 16, 2007) .......................................................................................21

*Little Rock School Dist.*,
   921 F.2d 1371 (8th Cir. 1990)..............................................................19

*McCoy v. Health Net, Inc.*,
   569 F. Supp. 2d 448 (D.N.J. 2008).......................................................29

*Mehling v. New York Life Ins.*,
   246 F.R.D. 467 (E.D. Pa. 2007) ...........................................................19

*Ritti v. U-Haul Int'l., Inc.*,
   05-4182, 2006 U.S. Dist. LEXIS 23393, at *15 (E.D. Pa. Apr. 26,
   2006)......................................................................................................26

*Stewart v. Abraham*,

iv

275 F.3d 220 (3d Cir. 2001) .................................................................23

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ................................................. 28, 29, 30

*Tardiff v. Knox County*,
    365 F.3d 1 (1st Cir. 2004) .......................................... 30, 31

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ..........................................................24

STATUTES

28 U.S.C. § 1715 ...............................................................16

OTHER AUTHORITIES

Newberg on Class Actions § 11:41 ........................................19

## I.      INTRODUCTION

After four years of litigation, including over a year of intensive and protracted settlement negotiations, the Parties have resolved this consumer class action related to Excess Oil Consumption and Battery Discharge on behalf of current and former owners and lessees of vehicles manufactured and distributed by Defendants BMW of North America, LLC ("BMW NA") and Bayerische Motoren Werke Aktiengesslschaft ("BMW AG") (captioned as "Bavarian Motor Works") (collectively, "Defendants") equipped with N63 engines ("Settlement Class Vehicles").[1] Under the Settlement Agreement, all Settlement Class Members[2] will receive a range of benefits, only some of which require submission of a claim by Class Members.  Benefits of the settlement include reimbursement for certain out-of-pocket costs, free future repairs and cash discounts for future oil services, and potentially a replacement engine subject to certain conditions. All Settlement Class Members will also receive a voucher transferrable to family members that is worth

---

[1] Capitalized terms used herein have the same meaning as the defined terms in the Settlement Agreement attached to the Declaration of Matthew D. Schelkopf as Exhibit 1.

[2] Settlement Class Members are "all current and former owners and lessees in the United States, including the District of Columbia and Puerto Rico," of Settlement Class Vehicles, defined as "U.S. specification model years 2009 through 2014 BMW 5 Series, 6 Series, 7 Series, X5, and X6 vehicles that contain the N63 engine distributed for sale, and registered and operated in the United States, including the District of Columbia and Puerto Rico."  (SA, §I(K), (N).)

either $1,000 or $1,500 toward the purchase or lease of a new BMW vehicle, depending on the model.

The Settlement Agreement resolves Plaintiffs' allegations that Defendants sold and leased Settlement Class Vehicles without telling consumers about defects that cause the engine to consume excessive oil and prematurely drain the battery. According to Plaintiffs, drivers spent considerable money on extra engine oil and battery replacements as a result of the underlying problem. Defendants attempted to address the Excess Oil Consumption through several technical service bulletins ("TSB"), which instructed technicians to add more oil, and with greater frequency, to the Settlement Class Vehicles. A TSB also attempted to address the Battery Discharge Issue by providing free replacement batteries, but only until the expiration of BMW's 4-year/50,000 Standard Maintenance Program. Defendants also initiated a Customer Care Program ("CCP") that provided partial relief for consumers, including providing a discount on a replacement engine. Plaintiffs believe that Defendants' measures did not sufficiently benefit consumers for the harms alleged in their Complaint.

Following months of negotiations and a total of three days of mediation over two sessions, held in two different cities, the Parties reached a Settlement that provides substantial relief to Settlement Class Members. Under the Settlement, Defendants agree to reimburse Settlement Class Members who submit valid claims

for: (a) the cost of up to three Oil Services, not to exceed $75 each (or, alternatively, credits for free, future oil services), on their Settlement Class Vehicles; (b) the cost of up to seven quarts of oil (not to exceed $10 a quart) purchased by the Settlement Class Member; (c) up to $50 for towing/rental/roadside assistance arising from the Excess Oil Consumption Issue and Battery Discharge Issue; and (d) the cost of one battery replacement purchased before (but within three years of) the Class Notice and outside of the New Vehicle Limited Warranty period. (Schelkopf Decl., Ex. 1 (SA), § III(A)(2)-(5).)[3] In addition, without the necessity of submitting a claim, Settlement Class Members will receive a credit of $75, each, for up to three future Oil Services on their Settlement Class Vehicles until the earlier of 10 years or 120,000 miles. (SA § III(B)(1).)

If the Excess Oil Consumption Issue cannot be corrected, and if the Settlement Class Vehicle satisfies certain conditions,[4] Defendants will provide a replacement engine for the Settlement Class Vehicle. Settlement Class Members may have to contribute to the cost of the replacement engine depending on the

---

[3] All future reference to "SA" shall refer to the Settlement Agreement attached as Exhibit 1 the Declaration of Matthew D. Schelkopf

[4] The Settlement Class Vehicle must (1) have had the CCP performed on the Settlement Class Vehicle; (2) thereafter failed two Oil Consumption Tests; and (3) BMW have been unable to resolve the excess Oil Consumption Defect after the second failed Oil Consumption Test and second repair attempt.

mileage. (SA § III(B)(4).) Settlement Class Members are entitled to a free 105Ah battery to replace a 90Ah battery, or, if the Settlement Class Vehicle cannot be retrofitted with 105Ah battery, with a free 90Ah battery (and further free replacement batteries if the replacement battery fails within 2 years). (SA § III(B)(5).) Furthermore, Defendants will perform up to three Oil Consumption tests if the Settlement Class Vehicle's low oil light illuminates within the oil service interval, and provide free repairs for Settlement Class Vehicles which fail an Oil Consumption test, within the earlier of 10 years or 120,000 miles (and no later than 1 year/12,000 from the Effective Date). (SA § III(B)(2).)

All Settlement Class Members are also entitled to two other important benefits. Each Settlement Class Vehicle, regardless of age or mileage, is entitled to one service under the Customer Care Program. (SA § III(B)(7).) All Class Members will receive a voucher, transferrable to family members, for $1,500 toward the purchase or lease of a BMW 6 or 7 Series vehicle or $1,000 toward any other BMW model. (SA § III(B)(8).)

Class Members will be notified of the proposed Settlement and its benefits through a direct mailing to each Class Member. (SA § IV(A).) A toll-free number will also be maintained along with the establishment of a Settlement website, which will maintain all Settlement documents for review by Class Members. (*Id.*)

In short, this proposed settlement will provide most, if not all, Settlement

Class Members with as much, or more, compensation as they may have obtained had this case proceeded through certification and trial. Plaintiffs therefore respectfully request that this Court grant their Unopposed Motion for Preliminary Approval of the Class Action Settlement. Granting the motion will allow the Parties to proceed with the notice plan envisioned by the Settlement Agreement, which in turn will allow Class Members to begin responding to, and taking part in, the Settlement during the months leading up to a final fairness hearing.

## II.  FACTUAL BACKGROUND

### A.  Plaintiffs' Allegations and Pre-Litigation Investigation

In 2008, BMW introduced a new V8, twin-turbocharged engine referred to as the "N63" in certain BMW 5 Series, 6 Series, 7 Series, X5, and X6 vehicles from the 2009 through 2014 model years ("Settlement Class Vehicles"). Plaintiffs allege that the N63 engine consumes excessive amounts of engine oil between regularly scheduled service visits (the "Excess Oil Consumption Issue"), as well as a Battery Discharge Issue that causes excessive battery strain, which in turn requires frequent battery replacement. (SAC ¶¶ 1, 3.)

The Settlement Class Vehicles were publicly criticized for the Excess Oil Consumption Issue in a Consumer Reports study of nearly 500,000 vehicles across numerous manufacturers, models, and model years for complaints regarding engine oil consumption. The V8 version of BMW's 5 series – which contains the N63

engine for model years 2011-13 – produced the worst results of any vehicle in the study. (SAC ¶¶ 38-44.) Three other BMW models that also came equipped with the N63 during certain model years included in the Consumer Reports study (the 6 Series, 7 Series, and X5) were among the five worst performing models studied for excessive oil consumption. (SAC ¶¶ 39-40.)

According to Plaintiffs, Defendants had exclusive knowledge or access to material facts about N63 vehicles and engines, not known or reasonably discoverable by consumers. (SAC ¶ 50.) Plaintiffs alleged, however, that Defendants failed to disclose the Excess Oil Consumption Issue to consumers prior to or at the time of purchase or lease. (*Id.*) Instead, Defendants allegedly took steps to mask the defect rather than to correct it or disclose it to the purchasing public. (SAC ¶ 51.)

In June 2013, Defendants issued technical service bulletin ("TSB") SIB-11-01-13 to dealers and service professionals, increasing the engine oil consumption and engine oil fill specifications for N63 vehicles. (SAC ¶ 53.) This was, Plaintiffs claimed, an attempt to mask the Excess Oil Consumption Issue without correcting it and without providing owners or lessees with a complete remedy for the defect. (SAC ¶¶ 53-54.)

In November 2013, Defendants issued TSB SIB 11 03 13 which set forth a new "Oil Consumption Specification" stating that "[a]ll BMW engines (excluding

Motorsport) can consume up to 1 quart of engine oil per 750 miles at any time."
(SAC ¶ 55.) Plaintiffs claim, according to the TSB, owners and lessees of these
vehicles may need to add up to 20 quarts of engine oil between regularly scheduled
oil changes.[5] (SAC ¶ 57.)

Following customer complaints about the Excess Oil Consumption Issue,
Defendants launched the "N63 Customer Care Package" (TSB SIB 00 13 14) on
December 29, 2014 (herein, "Customer Care Package"). (SAC ¶ 60.) The
Customer Care Package consisted of several different measures, which Plaintiffs
allege did not adequately address the Excess Oil Consumption Issue including: 1)
instructing service representatives to check each covered vehicle's timing chain,
fuel injectors, mass air flow sensors, crankcase vent lines, battery, engine vacuum
pump, and low pressure fuel sensor, and replace if necessary; 2) reducing the oil
change intervals from the earlier of 15,000 miles/two years to the earlier of 10,000
miles/one year; 3) offering purchasers discounts on new BMW vehicles to replace

---

[5] Engine oil is important because it functions as an essential lubricant for the
moving parts in internal combustion engines decreasing heat caused by friction and
reducing wear. Engine oil also has important cleaning and sealing functions, and
serves as an important medium for dissipating heat throughout the engine. As a
result, the Settlement Class Vehicles need the proper amount of engine oil in order
for the engine and its related parts to function safely. (SAC ¶ 65.) According to
Plaintiffs, the Oil Consumption Defect is a safety concern because it prevents the
engine from maintaining the proper level of engine oil and causes voluminous oil
consumption that cannot be reasonably anticipated or predicted, which can lead to
engine failure while the Settlement Class Vehicles are in operation. (SAC ¶ 67.)

their N63 vehicles; and 4) authorizing dealerships to provide purchasers with up to $50 of BMW merchandise or accessories. (SAC ¶¶ 60-64.)

Furthermore, according to Plaintiffs, the Battery Discharge Issue forces the Settlement Class Vehicles' batteries to rapidly deteriorate and require replacement every 10,000 miles or one year, well before the expected useful life of an automotive battery. (SAC ¶ 71.) To address the Battery Discharge Issue, Defendants issued Technical Service Bulletin SIB 61 30 14 instructing BMW service representatives to replace Settlement Class Vehicle batteries at every engine oil change if the battery had not been replaced in the previous 12 months. (SAC ¶ 76.) This bulletin provides N63 owners with free replacement batteries, but only until the expiration of BMW's 4 year or 50,000-mile Standard Maintenance Program. (*Id.*) Plaintiffs alleged this program was insufficient, as owners and lessees will be forced to continuously replace batteries at their own expense for the remaining period of ownership after the Standard Maintenance Program expires. (*Id.*)

## B.   History of the Litigation

Plaintiff Joon Bang, a California resident, filed this action on September 18, 2015, alleging that certain BMW vehicles with the N63 Engine are defective because they have an Excess Oil Consumption Issue (*see, e.g.*, ECF. No. 1, ¶¶ 40-48), and a Battery Discharge Issue (*see, e.g.*, ECF. No. 1, ¶¶ 49-62).

Another complaint by Scott Crockett, alleging similar claims, had been filed on September 15, 2015, in the United States District Court for the District of Kansas, Case No. 15-cv-09266-DDC-TJJ. Crockett agreed to dismiss his case, and pursue his claims in this action. Bang's and Crockett's claims were brought in a first amended complaint filed on December 21, 2015. Plaintiff's counsel in the *Bang* and *Crockett* matters then moved to be appointed interim co-lead counsel and liaison class counsel, which was granted on January 15, 2016. (ECF. No. 19.) Thereafter, BMW NA filed a motion to dismiss the first amended complaint. (ECF. No. 22.)

Around the same time, two other putative class actions were filed alleging a defect in the N63 engine, *Kelley v. BMW of North America, LLC*, Case No. 15-cv-09721-PA-RAO, filed on December 18, 2015, in the United States District Court for the Central District of California, and *Lesieur v. BMW of North America, LLC*, Case No. 15-cv-06143-EDL, filed on December 28, 2015 in the United States District Court for the Northern District of California.

By agreement, these actions were transferred to this Court and a consolidated second amended complaint ("SAC") was filed on March 21, 2016. (ECF. No. 32.) The SAC asserts claims for (1) violation of the N.J. Consumer Fraud Act, (2) breach of express and implied warranty, (3) violation of the Magnusson-Moss Act, (4) violation of the CLRA, (5) violation of the UCL,

(6) violation of the FAL, (7) violation of the Song-Beverly Act, (8) violation of

N.Y. Gen. Bus. Law §§ 349, 350, (9) violation of the Washington Consumer

Protection Act, (10) violation of the Kansas Consumer Protection Act;

(11) violation of the Texas Deceptive Practices Act; and (12) violation of the

Connecticut Deceptive Trade Practices Act.

BMW NA filed a motion to dismiss the SAC on April 21, 2016, arguing

that, *inter alia*, Plaintiffs lacked Article III standing, that they failed to state a cause

of action for the statutory consumer fraud claims, and they failed to state warranty

claims. (ECF. No. 35.) Plaintiffs filed their memorandum in opposition on May 23,

2016. (ECF. No. 38), and BMW NA filed its reply brief on June 7, 2016. (ECF.

No. 41.) After the court granted the consolidation request, the Court entered an

order, on December 2, 2016, denying BMW NA's motion to dismiss. (ECF. Nos.

45-46.) BMW NA filed an answer on January 16, 2017. (ECF. No. 55.)

The Parties commenced discovery, including the production of documents.

The Parties first negotiated and agreed upon a Stipulated Order Establishing

Document Discovery Protocol, which was filed with the Court and approved by

Magistrate Judge Mannion on March 3, 2017. (ECF. No. 65.) Plaintiffs' counsel

then served interrogatories and document requests on BMW NA. The Parties also

exchanged their initial disclosures.

Following the discovery requests, BMW NA resisted production of certain

documents, requiring the Court's assistance. (*See* ECF Nos. 72, 82.) However, BMW NA responded to written discovery, and produced over 10,000 pages to date, including: vehicle service and warranty history for each of the named Plaintiffs; nationwide sales data for Settlement Class Vehicles; oil consumption test forms from BMW Centers (dealers); original and revised Technical Service Bulletins specifically dealing with the oil consumption and battery issues; documents relating to the issuance and implementation of the Customer Care Package; owners' manuals and warranty manuals for each of the Settlement Class Vehicles; warranty claims data for the Settlement Class Vehicles; and documents identifying Defendants' internal investigation, analysis, and conclusions.

As noted above, Plaintiffs' counsel investigated and analyzed the oil consumption and battery problems associated with the N63 engine. In addition, Plaintiffs' counsel interviewed multiple non-party witnesses and responded to inquiries from putative class members, with hundreds of putative class members having directly contacted Plaintiffs' counsel as of the date of this filing.

### C.    Settlement

On August 3, 2017, the Parties engaged in a mediation session in New York with mediator Brad Winters, Esq. While productive, the case did not resolve then. On October 2 and 3, 2017, the Parties participated in a second, in-person mediation over two full days in Missouri, resulting in a class-wide settlement, memorialized

in the Settlement Agreement.

The Parties did not discuss or negotiate incentive awards for the Plaintiffs or attorneys' fees and expenses until after an agreement on the framework and material terms for settlement of the class claims was reached. All of the terms of the Settlement Agreement are the result of extensive, adversarial, and arm's-length negotiations between experienced counsel for both sides.

### D.    Terms of the Settlement Agreement

#### 1.    Reimbursement for Out of Pocket Costs for the Oil Consumption and Battery Discharge Issues

The Settlement Agreement first provides Settlement Class Members with an opportunity to recover past, out-of-pocket expenses on a claims-made basis.  First, Defendants will reimburse Settlement Class Members for out-of-pocket costs for up to three Oil Services, not to exceed $75 each, on their Settlement Class Vehicles, provided that the costs were (a) actually paid by the Settlement Class Member (b) for an Oil Service performed during 10 years/120,000 miles (whichever is earlier) from first use, and (c) that Oil Service took place less than 12 months/10,500 miles after the previous oil change. (SA § III(A)(2).)  Settlement Class Members may elect to receive a free future oil service in lieu of the $75 cash reimbursement for each past qualifying oil service.

Second, Defendants will reimburse Settlement Class Members for the cost of up to seven quarts of oil (not to exceed $10 a quart) purchased by the Settlement

Class Member, provided that (a) adequate proof of purchase is presented; (b) the oil was of the same type and grade as provided in the Settlement Class Vehicle's owner's manual; (c) at least one prior Excess Oil Consumption Issue complaint was communicated to a BMW Center (dealership) and confirmed by documentation; and (d) the Settlement Class Vehicle had fewer than 10 years/120,000 miles at the time of the oil purchase. (SA § III(B)(3).)

Third, Defendants will reimburse Settlement Class Members for the cost of one towing, rental, or roadside assistance, up to $50, incurred by Settlement Class Members, if the Settlement Class Vehicle was towed to a BMW Center or third-party repair facility and with documentation confirming that the towing was related to an Excess Oil Consumption Issue or Battery Discharge Issue. (SA § III(B)(4).)

Fourth, Defendants will reimburse the cost of one battery replacement that was incurred within three years prior to the Notice Date and purchased outside of the New Vehicle Limited Warranty period. (SA § III(B)(5).)

Claims for reimbursement must be submitted within thirty (30) days after the Final Approval Hearing. (SA § I(F).)

### 2.     Complimentary Repairs and Services

In addition to reimbursements, the Settlement provides a host of additional benefits including several available to all Settlement Class Members that do not require the submission of any claim. All Settlement Class Members will receive a

credit of $75, each, for up to three future Oil Services on a Settlement Class Vehicle until the earlier of 10 years or 120,000 miles without the necessity of submitting a claim. (SA § III(B)(1).) This is a benefit to all owners/lessees of the approximately 84,000 N63 equipped BMW vehicles, regardless of whether they have experienced excessive oil consumption. Settlement Class Members are also entitled to one free 105Ah battery to replace a 90Ah battery, or, if the Settlement Class Vehicle cannot be retrofitted with 105Ah battery, with a 90Ah battery. (SA § III(B)(5)-(6).) Defendants will further provide free replacement batteries if the replacement battery fails within 2 years of installation, and that failure is not due to customer negligence. (*Id.*)

Defendants will perform up to three Oil Consumption tests if the Settlement Class Vehicle's low oil light illuminates within the oil service interval, and provide free repairs relating to the Excess Oil Consumption Issue for Settlement Class Vehicles which fail an Oil Consumption test, within the earlier of 10 years or 120,000 miles (unless within 1 year/12,000 miles from the Effective Date). (SA § III(B)(2).) Furthermore, each Settlement Class Vehicle, regardless of age or mileage, is entitled to one service under the Customer Care Program. (SA § III(B)(7).) Finally, all Class Members are also eligible for $1,500 toward the purchase or lease of a new BMW 6 or 7 Series vehicle or $1,000 toward the purchase or lease of any other new BMW vehicle. (SA § III(B)(8).)

### 3.    Engine Replacement

If the engine is defective, Defendants will provide a replacement engine if the Settlement Class Member demonstrates that: (a) the CCP was performed on the Settlement Class Vehicle; (b) the same vehicle thereafter failed two Oil Consumption Tests; and (c) Defendants cannot resolve the Excess Oil Consumption Issue. (SA § III(B)(4).) To obtain a replacement engine, the Settlement Class Member must contribute to the cost of the replacement engine depending on the mileage. (*Id.*) The contribution schedule is as follows:

| Odometer miles at the time of return to a BMW Center for an oil consumption issue after 2nd failed oil consumption test and 2nd repair attempt | | Customer Contribution |
|---|---|---|
| 50,001 | 60,000 | 5% |
| 60,001 | 70,000 | 15% |
| 70,001 | 80,000 | 30% |
| 80,001 | 90,000 | 45% |
| 90,001 | 100,000 | 60% |
| 100,001 | 110,000 | 75% |
| 110,001 | 120,000 | 90% |
| 120,001 | *above* | 100% |

### E.    Notification to Settlement Class Members

The Settlement Agreement contains a comprehensive notice plan, to be paid for and administered by Defendants. During the claims administration process, Class Counsel has the right to monitor the process to ensure Defendants are acting

in accordance with the Settlement Agreement.

Class Members will be notified by direct mail. (SA § IV(A).) Defendants will identify Class Members via Experian – a third party that interacts with state motor vehicle departments and collects the names and addresses of current and former automobile owners and lessees – and will send the notice to them by first-class mail. (*Id.*) In addition, the Settlement Administrator will set up a dedicated website that will include the notice, claim form, settlement agreement, and other relevant documents as well as a toll-free number to call for information. (*Id.*) Class Counsel will also provide a link to the settlement website on their respective law firms' websites. (SA § IV(F)(6).) As noted above and in the Settlement Agreement, Defendants have agreed to pay the costs of notice and other settlement administration costs. (*Id.*)

Notice will be sent within sixty days after entry of the Court's Order preliminarily approving this proposed settlement. (SA §IV(B).) Settlement Class Members seeking reimbursement for services related to the Excess Oil Consumption Issue or the Battery Discharge Issue must submit a Claim Form within thirty (30) days after the Final Approval Hearing. (SA § I(F).) Defendants have agreed to provide notice of the settlement to the appropriate state and federal officials, as required by the Class Action Fairness Act, 28 U.S.C. § 1715.

The Settlement Agreement clearly delineates the process and procedure to

be followed in the event that Defendants reject a claim for full reimbursement of out-of-pocket expenses. Within fifteen (15) days of the date of notice of the denial of a claim, the claimant may appeal the denial by providing the Settlement Administrator with the basis for the appeal. (SA § III(C)(4).) Thirty (30) days after the Settlement Administrator sends the last denial letter, the Settlement Administrator will provide counsel for the Parties with a list of all timely-submitted appeals and all documents related to the appeal. (*Id.*) The Parties will then meet and confer in an effort to resolve the appeal. (*Id.*) If that is unsuccessful, the appeal will be submitted to the Special Master, whose determination will be final and binding. (*Id.*)

The Settlement Agreement also accounts for any Class Members who wish to object to or exclude themselves from the settlement. Any such request must be postmarked no later than the Opt-Out Deadline specified in the Court's Preliminary Approval Order. (SA § V(A).) The Settlement Agreement requires that any objection or opt-out request contain sufficient information to reasonably demonstrate that the submission is made by a person who actually has standing as a Class Member. (*Id.*)

### F.        Attorney's fees and Incentive Awards

Defendants have agreed to not oppose Class Counsel's attorneys' fees and expenses request in the aggregate amount of up to $3,022,000. Defendants have

also agreed to not oppose incentive awards of $3,500 to each of the eight named

Plaintiffs. (SA § VIII(B)-(C).) Plaintiffs will seek Court approval of these

payments before the deadline for Class Members to file objections. Significantly,

these obligations to pay Class Counsel's Court-approved fees and expenses and the

incentive awards will not reduce or otherwise have any effect on the benefits the

Class will receive. (*Id.*)

### G.    The Release

In exchange for the foregoing – and subject to approval by the Court – Class

Members who do not timely exclude themselves will be bound by a release

applicable to all claims arising out of or relating to the claims that were or could

have been asserted in the Action, which relate to Excess Oil Consumption and

Battery Discharge in the Settlement Class Vehicles. (SA § VII.) The Released

Claims will extend to BMW NA, BMW AG, and their related entities and persons.

(*Id.*) The Released Claims will not, however, apply to any claims for death,

personal injury, and property damage other than damage to the Settlement Class

Vehicle. (*Id.*) The settlement will also result in the dismissal of this case with

prejudice. (SA § II(A)(7).)

## III.   ARGUMENT

Before a settlement of a class action can receive final approval, the Court

must determine that it is "fair, reasonable, and adequate." *See* Fed. R. Civ. P.

23(e)(2). The Court must also "direct notice in a reasonable manner to all class members who would be bound by the proposal." *See* Fed. R. Civ. P. 23(e)(1).

At this preliminary stage, however, "the Court is required to determine only whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *In re Nat'l Football League Players' Concussion Injury Litig. ("In re NFL")*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (quoting *Mehling v. New York Life Ins*., 246 F.R.D. 467, 472 (E.D. Pa. 2007) (citations omitted)).[6] As one court has stated, the purpose of preliminary approval "is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Gautreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). Under Rule 23, a settlement falls within the "range of possible approval" if there is a conceivable basis for presuming that the

---

[6] "[A] presumption of fairness exists where a settlement has been negotiated at arm's length, discovery is sufficient, the settlement proponents are experienced in similar matters and there are few objectors." *In re Ins. Brokerage Antitrust Litig*., 297 F.R.D. 136, 144 (D.N.J. 2013) (citing *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)). As the leading commentator on class actions has noted, courts usually adopt "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." Newberg on Class Actions § 11:41; *see also Little Rock School Dist.,* 921 F.2d 1371, 1391 (8th Cir. 1990) (stating that class action settlement agreements "are presumptively valid").

standard applied for final approval—fairness, adequacy, and reasonableness—will

be satisfied. *In re NFL*, 301 F.R.D. at 198.

      This approach is consistent with the principle that "settlement of litigation is

especially favored by courts in the class action setting." *In re Insurance Brokerage*

*Antitrust Litig.,* 297 F.R.D. 136, at 144 (D.N.J. 2013). Because there are no

"obvious deficiencies" in the Settlement Agreement, nor any "grounds to doubt its

fairness," the Settlement easily meets the requirements for preliminary approval.

Plaintiffs respectfully submit that this Settlement is fair, adequate, and reasonable;

that the requirements for final approval will be satisfied; and that Class Members

will be provided with notice in a manner that satisfies the requirements of due

process and Federal Rule of Civil Procedure 23(e). Therefore, this Court is

respectfully requested to enter the proposed order granting preliminary approval,

which will: (i) grant preliminary approval of the proposed settlement; (ii) certify

the Settlement Class pursuant to Federal Rule of Civil Procedure, Rule 23(b)(3);

(iii) schedule a final approval hearing to consider final approval; and (iv) direct

that notice of the proposed settlement and final approval hearing be provided to

Settlement Class Members.

      **A.    The Settlement Should Be Preliminarily Approved**

      At the preliminary approval stage, the court simply "conduct[s] a threshold

examination of the overall fairness and adequacy of the settlement in light of the

likely outcome and the cost of continued litigation." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001). This is because, unlike final approval, "[p]reliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Zimmerman v. Zwicker & Assocs., P.*C., No. CIV. 09-3905 RMB JS, 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011).

In determining whether the proposed settlement falls within the "range of reasonableness," district courts within the Third Circuit typically consider factors such as: (i) whether the negotiations occurred at arm's length; (ii) whether there was sufficient discovery; and (iii) whether the proponents of the settlement are experienced in similar litigation. *Jones v. Commerce Bancorp, Inc.*, No. 05-5600 (RBK), 2007 U.S. Dist. LEXIS 52144, at *5 (D.N.J. July 16, 2007); *see also*, *In re Aetna UCR Litig.*, No. 07-3541-KSH, 2013 U.S. Dist. LEXIS 127691, at *44 (D.N.J. Aug. 30, 2013) (finding that preliminary approval should be granted "unless a proposed settlement is obviously deficient . . . and 'where the proposed settlement is the result of the parties' good faith negotiations, there are not obvious deficiencies and the settlement falls within the range of reason.'" (citations omitted)).

In light of these standards, the criteria for granting preliminary approval of this complex class action lawsuit are met. The Settlement was reached as a result of extensive, arm's-length negotiations between experienced counsel, mediated by

Brad Winters, a well-regarded and experienced mediator. Counsel for all Parties believe the Settlement is in the best interests of their respective clients. Prior to the mediation, Plaintiff's counsel extensively investigated the disputed claims and reviewed thousands of documents produced by Defendants. The Settlement will also remove the uncertainties and risks to the Parties from proceeding further in the litigation. For these reasons, preliminary approval should be granted.

### B.   Certification of the Proposed Class for Purposes of Settlement Only Is Appropriate

Both the Supreme Court and various circuit courts have recognized that the benefits of a proposed settlement of a class action can be realized only through the certification of a settlement class. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998). As such, Plaintiffs seek the conditional certification of the Class set forth above and in the Settlement Agreement.[7]

For the Court to certify a class for settlement, the "[s]ettlement [c]lass[] must satisfy the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, as well as the relevant 23(b) requirement." *In re GMC Pick-up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 778 (3d Cir. 1995). Here, Plaintiffs seek certification of the Class pursuant to Rule 23(b)(3), which

---

[7]  BMW has agreed to certification of the class for settlement purposes only. (*See* SA § X(A).)

provides that certification is appropriate where "the court finds that the questions

of law or fact common to class members predominate over any questions affecting

only individual members [predominance], and that a class action is superior to

other available methods for fairly and efficiently adjudicating the controversy

[superiority]." Fed. R. Civ. P. 23(b)(3). As discussed below, these requirements are

met for purposes of settlement in this case.

### 1.      Numerosity under Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all

members is impracticable." Fed. R. Civ. P. 23(a)(1). "[G]enerally, if the named

plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the

[numerosity requirement] of Rule 23(a) has been met." *Stewart v. Abraham*, 275

F.3d 220, 226-227 (3d Cir. 2001) (citation omitted).

The Complaint alleges (and Defendants do not dispute) that approximately

84,000 Settlement Class Vehicles were sold throughout the United States. (SAC ¶¶

185-188.) Therefore, the numerosity requirement has been met.

### 2.      Commonality under Rule 23(a)(2)

Rule 23(a)(2) requires that there be "questions of law or fact common to the

class." Fed. R. Civ. P. 23(a)(2). "A finding of commonality does not require that

all class members share identical claims, and factual differences among the claims

of the putative class members do not defeat certification." *In re Prudential Ins. Co.*

*Sales Litig.*, 148 F.3d 283, 310 (3d Cir. 1998). The Supreme Court has stated that Rule 23(a)(2)'s commonality requirement is satisfied where the plaintiffs assert claims that "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ("[F]or purposes of Rule 23(a)(2) even a single common question will do.").

In this case, there are numerous common questions of law and fact, such as whether the Settlement Class Vehicles suffer from a uniform design defect that causes them to consume improper or excessive amounts of engine oil and prematurely drain the battery; whether Defendants had a duty to disclose these alleged defects to consumers; and whether Plaintiffs have actionable claims. Commonality is, therefore, satisfied. *See Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146 (CCC), 2013 U.S. Dist. LEXIS 46291, at *12-13 (D.N.J. Mar. 22, 2013) ("Several common questions of law and fact exist in this case, including whether the transmissions in the Class Vehicles suffered from a design defect, whether Volvo had a duty to disclose the alleged defect, whether the warranty limitations on Class Vehicles are unconscionable or otherwise unenforceable, and whether Plaintiffs have actionable claims.").

### 3.     Typicality under Rule 23(a)(3)

Rule 23(a)(3) requires that a representative plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23(a)(3). "The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Barnes v. Am. Tobacco Co*., 161 F.3d 127, 141 (3d Cir. 1998). "As with numerosity, the Third Circuit has 'set a low threshold' for satisfying typicality, holding that '[i]f the claims of the named plaintiffs and class members involve the same conduct by the defendant, typicality is established . . . .'" *In re Ins. Brokerage Antitrust Litig*., 297 F.R.D. 136, 149 (D.N.J. 2013) (citation omitted).

Here, all of Plaintiffs' claims arise out of the same alleged conduct by Defendants related to the design, manufacture, and sale of the Settlement Class Vehicles (and their failure to disclose the alleged defect). *See Henderson,* 2013 U.S. Dist. LEXIS 46291 at *14 (typicality satisfied where "the claims made by the named Plaintiffs and those made on behalf of Settlement Class Members arise out of the same alleged conduct by Volvo – namely, Volvo's design, manufacture and sale of the allegedly defective Class Vehicles and Volvo's alleged failure to disclose the defect."). This requirement is, likewise, met here.

### 4.     Adequacy of Representation under Rule 23(a)(4)

The final requirement of Rule 23(a) is that "the representative parties will

fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In

determining the adequacy of representation, the court should "'evaluate [both] the

named plaintiffs' and . . . counsel's ability to fairly and adequately represent class

interests.'" *Gotthelf v. Toyota Motor Sales, U.S.A., Inc*., 525 Fed. Appx. 94, 100-01

(3d Cir. 2013) (alterations in original; citation omitted)). In doing so, "the district

court ensures that no conflict of interest exists between the named plaintiffs'

claims and those asserted on behalf of the class, and inquires whether the named

plaintiffs have the ability and incentive to vigorously represent the interests of the

class." *Id.* at 101 (citing *In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 291 (3d

Cir. 2010)).

　　In addressing the adequacy of the proposed class representative, district

courts examine whether he or she "has the ability and incentive to represent the

claims of the class vigorously, that he or she has obtained adequate counsel, and

that there is no conflict between the individual's claims and those asserted on

behalf of the class." *Ritti v. U-Haul Int'l., Inc.*, 05-4182, 2006 U.S. Dist. LEXIS

23393, at *15 (E.D. Pa. Apr. 26, 2006). Here, all of the Representative Plaintiffs

are adequate because they purchased one of the Settlement Class Vehicles subject

to the Settlement Agreement and were allegedly injured in the same manner based

on the same alleged defect. They have also each actively participated in the

litigation of this case, and have been in regular communication with their attorneys

regarding these proceedings.

The Settlement Agreement designates the following attorneys as Class Counsel: Matthew Schelkopf and David C. Wright of McCune Wright Arevalo LLP and Eric D. Barton of Wagstaff & Cartmell LLP. Mr. Wright of McCune Wright Arevalo and Mr. Barton of Wagstaff & Cartmell were previously named Co-Lead Interim Class Counsel and Mr. Schelkopf was named Liaison Counsel in the Court's order dated January 15, 2016. (ECF. No. 19.) With respect to the adequacy of these lawyers, they have invested considerable time and resources into the prosecution of this action. Class Counsel have a wealth of experience in litigating complex class action lawsuits, and were able to negotiate an outstanding settlement for the Class. Based on the outstanding results achieved here, and for the reasons set forth in Plaintiffs' motion for the appointment of interim class counsel (ECF. No. 18), the Court should appoint these attorneys as Class Counsel for the Class, and determine that Rule 23(a)'s adequacy requirement is satisfied.

### 5.    The Requirements of Rule 23(b)(3) Are Met

Plaintiffs seek to certify the Class under Rule 23(b)(3), which has two components: predominance and superiority. "Parallel with Rule 23(a)(2)'s commonality element, which provides that a proposed class must share a common question of law or fact, Rule 23(b)(3)'s predominance requirement imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the

class predominate over those affecting only individual class members." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011) (*en banc*) (citing *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009)). When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only, and that a showing of manageability at trial is not required. *See Amchem*, 521 U.S. at 618 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

The Third Circuit has reiterated that the focus of the predominance "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. Here, there are several common questions of law and fact that predominate over any questions that may affect individual Class Members. For example, were this case to proceed, the primary issue would be whether Defendants are liable for manufacturing and distributing Settlement Class Vehicles with an engine design defect and their alleged failure to disclose it. This is an issue subject to "generalized proof," and is a "question that is common to all class members." *See Henderson,* 2013 U.S. Dist. LEXIS 46291, at 17-18. Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

The second prong of Rule 23(b)(3) – that a class action be superior to other available methods for the fair and efficient adjudication of the controversy – is also readily satisfied. *See* Fed. R. Civ. P. 23(b)(3). Superiority requires the Court to consider whether or not "a class action is superior to other available methods of fairly and efficiently adjudicating the controversy." *Sullivan*, 667 F.3d at 296 (citations omitted). Rule 23(b)(3) provides a non-exhaustive list of factors to be considered when making this determination. *McCoy v. Health Net, Inc*., 569 F. Supp. 2d 448, 457 (D.N.J. 2008). These factors include: "(i) the class members' interests in individually controlling the prosecution or defense of separate actions; (ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; (iii) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (iv) the likely difficulties in managing a class action." *Id*. (quoting Fed. R. Civ. P. 23(b)(3)).

The Settlement Agreement provides Class Members with prompt, predictable, and certain relief, and contains well-defined administrative procedures to ensure due process. This includes the right of any Class Members who are dissatisfied with the settlement to object to it or to exclude themselves from it. The settlement also would relieve the substantial judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against Defendants. To litigate the claims of the potential Class Members on an

individual basis would not be economically feasible and result in "needless duplication of effort." *See Henderson*, 2013 U.S. Dist. LEXIS 46291, at *19 (citation omitted). And because the Parties seek to resolve this case through a settlement, any manageability issues that could have arisen at trial are marginalized. *Sullivan*, 667 F.3d 273, 302-03 (3d Cir. 2011). Therefore, "class status here is not only the superior means, but probably the only feasible [way] . . . to establish liability and perhaps damages." *Augustin v. Jablonsky,* 461 F.3d 219, 229 (2d Cir. 2006) (quoting *Tardiff v. Knox County*, 365 F.3d 1, 7 (1st Cir. 2004)).

In sum, because the requirements of Rule 23(a) and Rule 23(b)(3) are satisfied, certification of the proposed Settlement Class is appropriate.

### C.    The Court Should Approve the Notice Plan

Under Federal Rule of Civil Procedure 23(e), class members who would be bound by a settlement are entitled to reasonable notice before the settlement is approved. *See* Fed. Jud. Ctr., *Manual for Complex Litig.* Fourth, § 30.212 (2004). And because Plaintiffs here seek certification of the Settlement Class under Rule 23(b)(3), "the Court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." *See In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig*., Case No. 3:08-MD-01998, MDL No. 1998, 2009 WL 5184352, , at *42-43 (W.D. Kentucky 2009) (citing Fed. R. Civ. P. 23(c)(2)(B)). In

order to satisfy these standards and "comport with the requirements of due process, notice must be 'reasonably calculated to reach interested parties.'" *Id.* at *43 (quoting *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008)); *DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1176 (8th Cir. 1995) ("Notice of a settlement proposal need only be as directed by the district court . . . and reasonable enough to satisfy due process.").

The notice plan described above and set forth in Section IV of the Settlement Agreement provides the best notice practicable under the circumstances. Through a reputable vendor, the addresses of current and former owners and lessees of Settlement Class Vehicles throughout the United States and Puerto Rico will be compiled and used to provide these Settlement Class Members with direct mail notification. Notice of the settlement will also be available on a dedicated website created by the Settlement Administrator, and information about it will be posted on the respective Class Counsel law firms' websites. *Henderson, supra,* is instructive in this regard. In that case, Judge Cecchi found that a substantially similar notice plan – which included direct mail notification to identifiable class members, a dedicated settlement website, and toll-free telephone number – satisfied Federal Rule of Civil Procedure 23(c)(2)(B) and 23(e). *Henderson*, 2013 U.S. Dist. LEXIS 46291, at *37-39. The same conclusion should be drawn here.

Finally, the content and substance of the proposed notice – which is attached

as Exhibit B to the Settlement Agreement – will include all necessary legal requirements and provide a comprehensive explanation of the settlement in simple, non-legalistic terms. *See* Fed. R. Civ. P. 23(c)(2)(B). Accordingly, the Parties respectfully request that the Court approve the notice plan.

### D.     A Final Approval Hearing Should be Scheduled

Finally, the Court should schedule a final approval hearing to decide whether to grant final approval to the settlement, address Class Counsel's request for attorneys' fees, expenses, and an incentive award for the Representative Plaintiffs, consider any objections and exclusions, and determine whether to dismiss this action with prejudice. *See* Fed. Jud. Ctr., *Manual for Complex Litig*. Fourth, § 30.44 (2004); *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 600 (3d Cir. 2010). Plaintiffs respectfully request that the final approval hearing be scheduled for approximately four months from the date the preliminary approval order is entered.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter the accompanying Order: (1) conditionally certifying this case as a class action pursuant to Federal Rules of Civil Procedure, Rules 23(a) and 23(b)(3) for the purpose of effectuating a class action settlement; (2) preliminarily approving the settlement; (3) directing notice to Settlement Class Members consistent with the

notice plan; (4) appointing of David C. Wright and Matthew Schelkopf of McCune Wright Arevalo, LLP and Eric D. Barton of Wagstaff & Cartmell LLP as Settlement Class Counsel; (5) setting dates for submissions of objections, opt-outs, and claims; and (6) scheduling a final approval hearing. A proposed order granting this relief is submitted with this memorandum.

Dated:  May 4, 2018                                      Respectfully submitted,

                                                        **McCune Wright Arevalo LLP**

                                                        By: *//s// Matthew D. Schelkopf*
                                                        Matthew D. Schelkopf
                                                        Joseph B. Kenney
                                                        **MCCUNE WRIGHT AREVALO, LLP**
                                                        555 Lancaster Avenue
                                                        Berwyn, PA 19312
                                                        Telephone: (610) 200-0581
                                                        mds@mccunewright.com
                                                        jbk@mccunewright.com

                                                        David C. Wright
                                                        **MCCUNE WRIGHT AREVALO, LLP**
                                                        3281 East Guasti Road, Suite 100
                                                        Ontario, CA 91761
                                                        Telephone: (909) 557-1250
                                                        Facsimile: (909) 557-1275
                                                        dcw@mccunewright.com

                                                        Eric D. Barton
                                                        Sarah Ruane
                                                        Melody Dickson
                                                        **WAGSTAFF & CARTMELL LLP**
                                                        4740 Grand Avenue, Suite 300
                                                        Kansas City, MO 64112

Telephone: (816) 701-1100
ebarton@wcllp.com
sruane@wcllp.com
mdickson@wcllp.com

***Attorneys for Plaintiffs and the
Proposed Settlement Class***